FILED

## IN THE UNITED STATES DISTRICT COURT FOR
## EASTERN DISTRICT OF VIRGINIA

2009 SEP 16  P 3: 55

CLERK US [illegible] COURT
[illegible]

| | |
|---|---|
| The Estate of Sa'adi Ali Abbas Husein,<br>Nidhal Khaza'al Salman,<br>Samah Sa'adi Ali,<br>Surah Sa'adi Ali,<br>Ali Sa'adi Ali, Mohammed Sa'adi Ali<br><br>       Plaintiffs, citizens of Baghdad, Iraq<br>       Addresses not disclosed<br>       for reasons of safety and security<br><br>       v.<br><br>Erik Prince<br>1650 Tysons Boulevard<br>McLean, VA 22012<br><br>       Defendant | CIVIL ACTION<br>NO. 1:09 CV 1048 TSE/IDD<br><br>CIVIL COMPLAINT<br>JURY DEMAND |

## COMPLAINT AND JURY DEMAND

1.    This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1332 (diversity jurisdiction); 28 U.S.C. § 1350 (Alien Tort Statute); and 28 U.S.C. § 1367 (supplemental jurisdiction). and 18 U.S. C. §1964 (Racketeer Influenced and Corrupt Organizations).

2.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(3), § 1391(b)(2), and 18 U.S. C. §1965(a).

## PARTIES

3.    Plaintiff is the Estate of Sa'adi Ali Abbas Husein.  Before being shot and killed by Mr. Prince's employees, Mr. Husein was a 52-year old citizen of Baghdad, Iraq.  He was shot and killed on September 16, 2007.

4.      Plaintiff Nidhal Khaza'al Salman is the 49-year old widow of Sa'adi Ali Abbas Husein, who is now raising four children without her husband.

5.      Plaintiffs Samah Sa'adi Ali, Surah Sa'adi Ali, Ali Sa'adi Ali, and Mohammed Sa'adi Ali are the children of Sa'adi Ali Abbas Husein, now forced to grow up without their father.

6.      Defendant Erik Prince is a resident of McLean, Virginia, with business offices at 1650 Tysons Boulevard, McLean, Virginia 22102.

7.      Defendant Erik Prince created various corporate entities to serve as his alter ego. Mr. Prince created these corporate alter egos to obscure and hide his wrongdoing.  He personally controls all actions by the corporate entities.  These corporate entities do not abide by any corporate formalities. Funds are intermingled among the companies. Mr. Prince adds or subtracts funds from any given company to suit his own purposes without regard to any corporate formalities.

8.      Each and every company within Mr. Prince's empire is subject to any judgment entered in this action.  These entities include, but are not limited to, companies doing business under the following nomenclature:  Xe, Blackwater, Total Intelligence, Greystone, Paravante, Raven, Presidential Airlines, Prince Group, EP Investments, and various others that reasonable discovery will establish are wholly owned and controlled by Mr. Prince.

9.      Mr. Prince manages his vast empire from Virginia and North Carolina. He also travels frequently to Iraq and other locations.  He directly and personally supervises the conduct of his employees in Iraq by various means, including use of remote monitoring using sophisticated technology.  This monitoring is done in what is referred to as the "war room" located in Moyock, North Carolina.   Most of Mr. Prince's employees are wholly unaware of this real-time monitoring.

10.     On or about September 16, 2007, Mr. Prince's heavily armed employees drove into Nisoor Square in Baghdad and opened fire on innocent civilians stopped in traffic.

-2-

11.    Sa'adi Ali Abbas Husein was one of those struck and killed by the wanton shooting of Mr. Prince's employees.

12.    Mr. Prince is personally responsible for the assaults on Mr. Husein because the egregious misconduct of Mr. Prince and his employees was not an isolated or aberrational act. Rather, as will be shown by reasonable discovery, Mr. Prince personally directed and permitted a heavily-armed private army, including but not limited to the shooters at Nisoor Square, to roam the streets of Baghdad killing innocent civilians.

13.    Mr. Prince personally intended that his private army of men kill and wound innocent Iraqis, including Mr. Husein.

14.    Not all men employed by Mr. Prince participated in this private army intent on killing innocent Iraqis, but a substantial number did so. Those who killed and wounded innocent Iraqis tended to rise higher in Mr. Prince's organization than those who abided by the rule of law.

15.    Mr. Prince was well aware that his men, including his top executives in Moyock, North Carolina, viewed shooting innocent Iraqis as sport.

16.    Reasonable discovery will show that Mr. Prince made a series of verbal and written statements that evidenced his support for the wanton killing of those of the Islamic faith.

17.    Mr. Prince's top executives openly discussed "laying Hajjis out on cardboard" and bragged about their collective role in killing those of the Islamic faith. This egregious misconduct by Mr. Prince's private army would not have flourished without Mr. Prince's personal and direct approval.

18.    Mr. Prince armed the shooters at Nisoor Square, endorsed killing and wounding innocent Iraqis, and sent the Nisoor Square shooters to Iraq. But for Mr. Prince, the Nisoor Square shooters would not have been heavily armed with permission given to fire wantonly on the streets of

-3-

Bagdhad. The killings and woundings on September 16 are but part of the overwhelming litany of death and destruction caused by Mr. Prince's private army.

19.     The many deaths caused by Mr. Prince's private army are the subject of six other lawsuits filed in this District.

20.     The United States Department of Justice has indicted some of Mr. Prince's men for killing innocent Iraqis on September 16, 2009. One of Mr. Prince's men, Jeremy Ridgeway, has plead guilty and admitted he killed for no reason. The trial of the others is scheduled for early February, 2010, in federal district court in the District of Columbia.

21.     The United States Department of Justice intends to introduce evidence that the Nissor Square shooters were acting with an intent to kill innocent Iraqis, not to defend themselves. These men were part of Mr. Prince's private army. They knew that they would not face any reprimands or retribution from Mr. Prince. Instead, he encouraged and supported their actions. His support, both financial and otherwise, continues to date.

22.     As reasonable discovery will show, Mr. Prince knew or should have known that his army of men were going out "night hunting" after 10pm. Mr. Prince's men, armed with night googles and riding in Mr. Prince's wholly-owned helicopters, flew the streets of Baghdad, killing at random.

23.     Mr. Prince employed and continues to employ persons known to have murdered and assaulted innocent civilians.

24.     Mr. Prince's employees have destroyed a substantial amount of videographic and documentary evidence.

25.     Mr. Prince hires and deploys to Iraq foreign nationals without regard for the fact that they were forbidden by the laws of their country from serving as mercenaries.

-4-

26.     Mr. Prince repeatedly and routinely engages in other illegal conduct, such as violating the laws governing the use and sale of firearms.

27.     Plaintiffs suffered property damage to their car during the September 16, 2007, shooting.  RICO, 18 U.S.C. §1964 (c).

28.      This property damage is actionable under RICO 18 U.S.C. §1962(b) and (c) against Defendant Erik Prince.

29.      Defendant Erik Prince has created an enterprise that has engaged in a series of illegal acts.  Defendant Erik Prince's RICO enterprise consists of the following entities, as well as others that will be established by reasonable discovery:  E&J Holdings LLC, Satelles Solutions, Inc., Samarus CO LTD, Prince Group LLC,  Xe Services LLC (formerly EP Investments LLC and d/b/a Blackwater Worldwide), Greystone LTD, Total Intelligence Solutions LLC, all located at 1650 Tysons Boulevard, McLean, VA 22012; and Xe Services LLC, U.S. Training Center, Inc. (formerly Blackwater Lodge and Training Center, Inc.), GSD Manufacturing LLC (formerly Blackwater Target Systems), Blackwater Security Consulting LLC,  Presidential Airlines, and Raven Development Group LLC, all located at 850 Puddin Ridge Road, Moyock, NC 27958.  All of these entities are affiliated together, and engage in illegal conduct together. Reasonable discovery likely will establish that the Prince RICO Enterprise includes entities and others not yet known to Plaintiffs.

30.      Mr. Prince heads up this ongoing criminal enterprise that has been in existence since at least 2003.  The conduct of the Enterprise demonstrates a pattern and practice of repeated illegality designed to create more wealth for Defendant Erik Prince.

31.      There is no goal that accomplished, would bring this Prince RICO Enterprise to an end.  Rather, as evidenced by a lengthy series of illegal acts – ranging from murder to tax evasion to

-5-

destruction of evidence – Defendant Erik Prince and his RICO Enterprise will continue its racketeering unless stopped by this Court.

32.     Mr. Prince intends and approves of his men killing innocents. These acts constitute murder chargeable under state law by Mr. Prince. He, and he alone, had the power and position to ensure that his men abided by the law, or broke the law. Reasonable discovery will show that Mr. Prince made a litany of written and verbal comments that provided both direct and indirect approval for the gunning down of innocent Iraqis.

33.     Reasonable discovery will show that Mr. Prince caused murders to occur on or about the following dates: February 16, 2005, June 25, 2005, October 24, 2005, December 24, 2006, February 4, 2007, February 7, 2007, July 1, 2007, August 13, 2007, September 9, 2007, September 16, 2007, May 5, 2009, as well as on other dates not yet known to Plaintiffs. Reasonable discovery will show that one and perhaps more of the murders occurred in the United States.

34.     In June 2005, and reasonable discovery likely will show during other time periods as well, Mr. Prince and those acting at his direction or with his approval, engaged in a pattern of destroying audio and videotaped evidence that revealed criminal acts by Mr. Prince and the various members of the Enterprise. This destruction of evidence occurred in the United States (primarily North Carolina and Virginia), as well as in Iraq. This conduct violated 18 U.S.C. § 1512(3)(c).

35.     In March 2008, May 2009, and reasonable discovery likely will show during other time periods as well, Mr. Prince and those acting at his direction or with his approval engaged in a scheme to shred and otherwise destroy the documentary evidence memorializing the Enterprise's wide and varied illegal conduct. This destruction of evidence occurred in the United States (primarily North Carolina and Virginia) as well as in Iraq. This conduct violated 18 U.S.C. § 1512(3)(c).

36.     Reasonable discovery likely will show that on or after September 16, 2007, Mr. Prince and those acting at his direction or with his approval engaged in the destruction of physical evidence in violation of violates 18 U.S.C. § 1512(3)(c).

37.     During 2005, and reasonable discovery likely will show in subsequent years, Mr. Prince and those acting at his direction or with his approval engaged in a widespread pattern and practice of smuggling weapons and ammunition, including illegal ammunition, shortened barrel weapons and silencers.  Reasonable discovery likely will show that the Mr. Prince violated 18 U.S.C. § 1956 as he, and those acting at his direction or with his approval, funneled the proceeds of these ongoing illegal acts to various offshore accounts established in the names of the various entities within the Prince RICO Enterprise.

38.     Reasonable discovery likely will show that  Mr. Prince permitted his employees to violate 18 U.S.C. §§2251, 2251, 2252, or 2260, by having young girls provide oral sex to Enterprise members in the "Blackwater Man Camp" in exchange for one American dollar.  Reasonable discovery likely will show that these criminal violations were discovered, or could have been discovered, via surveillance from Mr.  Prince's operations in North Carolina.

39.     Mr. Prince's employees obtained and distributed controlled substances (steroids) in 2007, and reasonable discovery likely will show in other time periods as well.  Reasonable discovery likely will show that Mr. Prince knew or should have known that his employees were violating 18 U.S.C. §§1952(a)(1) and (3) by traveling in foreign commerce with an intent to carry on these unlawful activities relating to substances controlled by section 102(6) of the Controlled Substances Act.

40.     Mr. Prince violated Section 7201 of the Internal Revenue Code by willfully evading the payment of taxes during 2006 and 2007.  Mr. Prince attempted to conceal the existence of the

-7-

illegal tax evasion scheme from Congress and members of law enforcement.

41.     Reasonable discovery likely will show that Mr. Prince hid some or all of the proceeds from his various illegal racketeering acts in offshore accounts.

42.     The Prince RICO Enterprise continues to exist and continues to engage in repeated illegal acts. The Prince RICO Enterprise's racketeering will not stop, as it is immensely profitable for Defendant Erik Prince and the Enterprise he has created.

43.     The continued existence of the well-funded and powerful Prince RICO Enterprise poses a grave and special threat to the well-being of the world.

## DAMAGES

44.     Plaintiffs seek compensatory and punitive damages in an amount in excess of the jurisdictional amount set forth in 28 U.S.C. § 1332. Plaintiffs also seek any and all additional remedies (such as attorneys' fees) available under law and equity.

45.     Plaintiffs are entitled to any and all remedies available to them under law and equity as a result of the conduct alleged herein. These damages include RICO damages (including attorneys fees), compensatory damages, and punitive damages.

46.     The Plaintiffs seek also seek all equitable remedies available including, but not limited to, a Court Order that (a) requires Defendant Prince to cease his ongoing misconduct and divest himself of his profits after making due provision for the rights of innocents, (b) imposes reasonable restrictions on Defendant Prince's future activities or investments, and (c) prohibits Defendant Prince from engaging in any mercenary or private military business.

## COUNT ONE – RICO

47.     All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

48.     Mr. Prince committed a series of overt acts in the United States, including weapons

-8-

smuggling, tax evasion, destruction of evidence and others.

49.   Mr. Prince created the Enterprise.

50.   Mr. Prince personally benefits from the criminality of the Enterprise.

51.   Mr. Prince's misconduct, and the misconduct of the Enterprise, occurred in and has had substantial effect on the United States.

## COUNT TWO - WAR CRIMES

52.   All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

53.   Mr. Prince's acts were deliberate, willful, intentional, wanton, malicious and oppressive and constitute war crimes.

54.   Mr. Prince's acts took place during a period of armed conflict and were associated with the armed conflict.

55.   Mr. Prince has defended the conduct as necessitated by the armed conflict. .

56.   Mr. Prince's acts were associated with the armed conflict.  The armed conflict provided the opportunity for Mr. Prince to commit the acts.

57.   Mr. Prince knowingly and intentionally committed war crimes, including willful killing and willfully causing great suffering or serious injury to body or health, of Plaintiffs and others.

58.   Mr. Prince is liable for his conduct and the conduct of his employees that constitutes war crimes.

59.   Mr. Prince's misconduct caused grave and foreseeable injuries to Plaintiffs.

## COUNT THREE – ASSAULT AND BATTERY

60.   All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

61.     Mr. Prince unlawfully intended to and did inflict immediate injury upon Plaintiffs via the men in Mr. Prince's private army.

62.     Mr. Prince intentionally assaulted, battered, and made other offensive contacts; and aided and abetted the assaulting, battering and offensively contacting of the Plaintiffs.

63.     Plaintiffs did not consent to the offensive contacts.  Plaintiffs feared for their personal safety and felt threatened by Defendants' actions.

64.     Mr. Prince's men, acting with his direct and indirect approval and permission, committed the assaults and batteries.

65.     Mr. Prince's acts in giving his employees permission to wound and murder innocent civilians caused grave and foreseeable damages to Plaintiffs.

## COUNT FOUR – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

66.     All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

67.     Mr. Prince intentionally inflicted severe emotional distress by way of extreme and outrageous conduct on Plaintiffs and family members.

68.     Mr. Prince set the conditions, directly and/or indirectly facilitated, ordered, acquiesced, confirmed, ratified and/or conspired with others to inflict emotional distress on Plaintiffs

69.     Mr. Prince's acts caused grave and foreseeable injuries to Plaintiffs and family members.

## COUNT FIVE – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

70.     All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

71.     Mr. Prince negligently inflicted severe emotional distress on Plaintiffs and their

family members.

72.     Mr. Prince breached a duty to Plaintiffs and others present at the September 9, 2009, scene of the killings and infliction of bodily injury.

73.     Defendants' negligence directly and foreseeably harmed Plaintiffs and their family members.

## COUNT SIX – TORTIOUS SPOILATION OF EVIDENCE

74.     All preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

75.     Mr. Prince had a legal duty to preserve, and to ensure that his employees preserved, evidence relating to unauthorized uses of force.

76.     Mr. Prince and his employees intentionally destroyed that evidence to prevent detection of its wrongdoing.

77.     Mr. Prince and his employees' destruction of evidence significantly impaired Plaintiffs' ability to prove certain facts in this action.

78.     Mr. Prince and his employees' intent in destroying the evidence was to lessen the risk that they would be found liable by a jury hearing this action.

79.     Mr. Prince and his employees' intentional destruction of evidence harmed and continues to harm the Plaintiffs.

## PRAYERS AND DAMAGES

80.     Plaintiffs are entitled to any and all remedies available to them as a result of the conduct alleged herein, including, but not limited to:

> (a)     damages (including attorneys fees) available under RICO;
>
> (b)     compensatory damages for physical, mental and economic injuries;

(c)     punitive damages in an amount sufficient to strip Mr. Prince of the

substantial revenue he earned from his pattern of constant misconduct and

callous disregard for human life; and

(d)     any other damages permitted by law or equity.

Susan L. Burke (VA Bar #27769)
William T. O'Neil
William F. Gould (VA Bar #67002)
BURKE O'NEIL LLC
1000 Potomac Street, Suite 150
Washington, DC 20007
202.445.1409
Fax 202.232.5514
sburke@burkeoneil.com

*Attorneys for Plaintiffs*

Date:  September 16, 2009